IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NATIONAL TRUCK PROTECTION CO., INC., AND NATIONAL TRUCK PROTECTION CO., INC. D/B/A PREMIUM 2000+,<br><br>        Plaintiffs,<br><br>v.<br><br>CROWN POINT TRUCK & TRAILER REPAIR CENTER, INC.,<br><br>        Defendant. | 1:20CV1037 |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiffs, National Truck Protection Co., Inc. and National Truck Protection Co., Inc. d/b/a Premium 2000+ ("National Truck"), initiated this action in Forsyth County Superior Court on September 30, 2020, against Defendant, Crown Point Truck & Trailer Repair Center, Inc. ("Crown Point Repair"), alleging Material Misrepresentation, Fraud, and Unfair and Deceptive Trade Practices. (ECF No. 3.) Crown Point Repair removed the action to this Court on November 17, 2020, pursuant to 28 U.S.C. §§ 1332 and 1441(a) and (b). (ECF No. 1.) Before the Court is Crown Point Repair's Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. (ECF No. 8.) For the reasons stated below, Crown Point Repair's motion will be granted.

## I. BACKGROUND

According to its Complaint, National Truck "is a corporation organized and existing under the laws [of] New Jersey, doing business in its own name, and as Premium 2000+ . . . and with a principal place of business in Winston-Salem, North Carolina." (ECF No. 3 ¶ 1.) Crown Point Repair "is a corporation organized and existing under the laws of Illinois having its principal place of business located in Morton Grove, Illinois." (*Id.* ¶ 2.) Crown Point Repair's President and CEO is Ovidiu Astalus. (*Id.*) National Truck alleges that Ovidiu Astalus is also the President and CEO of Crown Point Truck & Trailer Sales, Inc. ("Crown Point Sales"), and that Crown Point Sales has the same principal place of business as Crown Point Repair. (*Id.* ¶ 8.) National Truck entered into a Universal Extended Warranty Dealer Agreement ("Agreement") with Crown Point Sales on March 27, 2019. (*Id.*) Crown Point Repair is not a party to the Agreement.

National Truck provides warranty and extended service contracts to the North American trucking industry and truck owners in the used truck market through a network of corporate and independent dealers. (*Id.* ¶ 7.) National Truck sells used truck owners extended warranties and service contracts which, "when covered under the contract," would allow "for claims to be submitted for payment of repairs or replacements made by any properly qualified repair facility after the truck owner has obtained prior authorization [from National Truck] for such repairs." (*Id.* ¶ 9.) The claims process requires the properly qualified repair facility "to submit supporting documentation including . . . a repair estimate and explanation for the repairs needed and photographs of the allegedly damaged vehicle parts." (*Id.* ¶ 10.)

2

Case 1:20-cv-01037-LCB-JEP   Document 18   Filed 09/24/21   Page 2 of 14

National Truck alleges that Crown Point Repair submitted 18 claims to National truck between April 25, 2019, and August 11, 2020, "seeking payment [for] vehicle repairs they allegedly performed under vehicle service contracts issued to [National Truck] customers." (*Id.* ¶ 11.) Crown Point Repair submitted all 18 claims and supporting documentation to National Truck through a combination of telephone calls and emails, "all of which were received by [National Truck] in Winston-Salem, Forsyth County, North Carolina." (*Id.* ¶ 12, 13.)

National Truck reviewed the eighteen "claims for payment and supporting documents it received in Winston-Salem." (*Id.* ¶ 14.) "In reliance on the documents submitted by Crown Point [Repair], . . . [National Truck] issued payments on 16 of the 18 repair claims . . . via electronic transfer and/or check, with all 16 payments originating" in Winston-Salem, (*Id.* ¶¶ 15–16). National Truck alleges that while it was "reviewing and processing a new claim submitted by Crown Point Repair to [National Truck] . . . in Winston-Salem," National truck discovered that Crown Point Repair had previously submitted false documentation "in support of prior claims previously paid to Crown Point [Repair]." (*Id.* ¶ 17.)

National Truck commenced this action in Forsyth County Superior Court, (ECF No. 3), and Crown Point Repair removed the action to this Court, (ECF No. 1). Crown Point Repair no moves to dismiss National Truck's claims pursuant to Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(3) for improper venue. (ECF No. 8.)

## II.   STANDARD OF REVIEW

A challenge to personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure is a question of law, and the plaintiff bears the ultimate burden of proving

jurisdiction. *See Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). The Fourth Circuit has observed that the plaintiff's burden of proof "varies according to the [procedural] posture of [the] case and the evidence that has been presented to the court." *Grayson*, 816 F.3d at 268.

Where the court decides a pretrial personal jurisdiction question without conducting an evidentiary hearing—"reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint"—a plaintiff "need only make a prima facie showing of personal jurisdiction" to withstand a jurisdictional challenge. *Id.* "[A] plaintiff makes a *prima facie* showing of personal jurisdiction by presenting facts that, if true, would support jurisdiction over the defendant." *See Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 561 (4th Cir. 2014) (citing *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003)). When considering whether the plaintiff has made a prima facie showing of jurisdiction, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* at 558 (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

### III. DISCUSSION

#### A. Personal Jurisdiction

National Truck argues that the Court has both specific and general jurisdiction over Crown Point Repair. (ECF No. 14 at 11–12.)

"The Due Process Clause of the Fourteenth Amendment constrains a state's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277,

4

283 (2014) (citation omitted). A federal district court can exercise personal jurisdiction over a nonresident defendant only if "(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather*, 773 F.3d at 558. North Carolina's long-arm statute "permits the exercise of personal jurisdiction . . . to the outer limits allowable under federal due process." *Id.*; *Dillon v. Numismatic Funding Corp.*, 231 S.E.2d 629, 630 (N.C. 1977) (holding that, by enacting N.C.'s long arm statute, the North Carolina General Assembly "intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process"). The two-prong test, therefore, "merges into [a] single question," allowing the court to proceed directly to the constitutional analysis. *Universal Leather*, 773 F.3d at 558–59.

Under the Due Process Clause of the Fourteenth Amendment, two paths permit a court to exercise personal jurisdiction over a nonresident defendant. *Id.* at 559. One path is general jurisdiction, "which permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Walden*, 571 U.S. at 283 n.6. The other path is specific jurisdiction, which "depends on an 'affiliatio[n] between the forum and the underlying controversy.'" *Id.* (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

    1. <u>General Jurisdiction</u>

For an exercise of general jurisdiction to be proper, a foreign corporation must have "continuous corporate operations within a state [that are] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those

5

activities." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (emphasis omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (internal quotation omitted). The paradigm bases for the exercise of general jurisdiction for a corporation is the place where a corporation is regarded as at home: the place of incorporation and principal place of business. *Daimler*, 571 U.S. at 137.

Here, National Truck has failed to make a prima facie showing that this Court has general jurisdiction over Crown Point Repair. According to National Truck's Complaint, Crown Point Repair "is a corporation organized and existing under the laws of Illinois having its principal place of business located in Morton Grove, Illinois." (ECF No. 3 ¶ 2.) In addition, National Truck has failed to allege facts sufficient to establish that Crown Point Repair had continuous and systematic contacts with North Carolina to essentially render it at home here. National Truck's only allegations of contact by Crown Point Repair are by email and telephone which were received and responded to by National Truck's location in North Carolina. This is insufficient to establish that Crown Point Repair had continuous and systematic contacts with North Carolina to essentially render it at home in the State.

Accordingly, National Truck has failed to satisfy its burden of demonstrating a prima facie showing that this Court has general jurisdiction over Crown Point Repair.

2. <u>Specific Jurisdiction</u>

Specific jurisdiction, on the other hand, requires "that the relevant conduct [has] such a connection with the forum state that it is fair for the defendant to defend itself in that state." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009); *Universal Leather*, 773 F.3d at 559 (recognizing that the "touchstone" of the specific jurisdictional inquiry is fairness). A court may exercise specific jurisdiction when "the defendant has purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations and citation omitted). The Fourth Circuit employs a three-prong test to determine whether the exercise of specific jurisdiction comports with the requirements of due process: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Universal Leather*, 773 F.3d at 559 (quoting *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012)). Only if the court finds that the plaintiff has satisfied the purposeful availment prong does the court need to consider the remaining elements of the specific jurisdiction test. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

The "purposeful availment" prong of the analysis "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal quotations and citation omitted). It is rooted in the concept of minimum contacts and

contemplates whether "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." *Universal Leather*, 773 F.3d at 559 (quoting *Fed. Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 658 (4th Cir. 1989)). The analysis is "flexible" and involves a case-by-case consideration of several factors. *Id.* at 560 (quoting *Tire Eng'g*, 682 F.3d at 302). In the business context, courts consider the following non-exhaustive list:

> (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum."

*Id.* (quoting *Consulting Eng'rs*, 561 F.3d at 278). "Through an analysis of such factors, if a court finds that the defendant has availed [itself] of the privilege of conducting business in the forum, specific jurisdiction exists." *Consulting Eng'rs*, 561 F.3d at 278.

Also, pertinent here in "the Internet context," the Fourth Circuit relies on the three-part test articulated in *ALS Scan* to determine "when it can be deemed that an out-of-state citizen, through electronic contacts, has conceptually 'entered' the State via the Internet for jurisdictional purposes." *ALS Scan, Inc. v. Digit. Serv. Consultants*, 293 F.3d 707, 713, 714. In *ALS Scan*, the court held that a state can exercise jurisdiction over an out of state defendant who "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, [if] (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 714.

Here, National Truck argues that the Court has personal jurisdiction over Crown Point Repair both because of Crown Point Repair's business and digital contacts with North Carolina. (ECF No. 14 at 16–20.) Thus, this Court will look to both *Universal Leather's* eight factors and *ALS Scan's* three-part test to determine whether Crown Point Repair's connections with North Carolina are such that it purposefully availed itself of the privilege of conducting activities in the state, and further that it would not offend due process to hale the company into this Court.

National Truck does not allege that Crown Point Repair maintains offices or agents in North Carolina. Nor does it allege that Crown Point Repair owns property in North Carolina or has made in-person contact with National Truck in North Carolina regarding their business relationship. Neither do the parties have a contractual relationship and therefore no choice of law governs the transaction between the parties or makes North Carolina the proper forum state. However, National Truck does contend that Crown Point Repair reached into North Carolina to initiate business, deliberately engaged in significant or long-term business activities in the state, that performance of duties occurred in the State, and that the nature, quality, and extent of the parties' communications about the business being transacted constituted purposeful availment of the privilege of doing business in North Carolina.

To satisfy the minimum contacts requirement for specific jurisdiction, "the contacts [must] proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Burger King*, 471 U.S. at 475 (internal quotations omitted); *see also Walden*, 571 U.S. at 284 ("[T]he relationship among the defendant, the forum, and the litigation . . . must arise out of contacts that the 'defendant himself' creates with the forum

9

State.")  The minimum contacts inquiry cannot be satisfied "by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* at 284.  The contacts must be "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285.  "[T]he plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*

Construing all factual allegations in the light most favorable to National Truck, this Court concludes that it has failed to allege facts sufficient to support a prima facie showing that Crown Point Repair purposely availed itself of doing business in North Carolina.  First, with respect to National Truck's argument that "Crown Point [Repair] reached into North Carolina to solicit or initiate business" each time it submitted a claim to National Truck in North Carolina. (ECF No. 14 at 16.)  As earlier stated, the only contacts alleged that Crown Point Repair has with North Carolina are the emails and telephone calls to National Truck regarding National Truck's customers warranties—which happened to be received and responded to by their Winston-Salem, North Carolina location.  While such contacts combined with other activities may be sufficient to confer specific jurisdiction—standing alone, they do not.

National Truck next contends that "Crown Point Repair deliberately engaged in a significant and long-term business in North Carolina." (*Id.* at 17.)  To support this assertion, National Truck claims that "[b]etween April 25, 2019, to August 11, 2020, there were at least 54 separate communications relating to the 18 claims directed by Crown Point Repair to [National Truck] in North Carolina." (*Id.* at 17–18.)  While it is true that Crown Point Repair

10

Case 1:20-cv-01037-LCB-JEP   Document 18   Filed 09/24/21   Page 10 of 14

submitted these claims "seeking payment [for] vehicle repairs they allegedly performed under vehicle service contracts issued to [National Truck] customers," (ECF No. 3 ¶ 11), it was National Truck's claims process that required a properly qualified repair facility submit "supporting documentation including . . . a repair estimate and explanation for the repairs needed and photographs of the allegedly damaged vehicle parts to National Truck," (*id.* ¶ 13). In this case Crown Point Repair was told to do so, and those claims just happened to be received by National Truck's North Carolina location. It appears this was the extent of the parties' relationship. There is no allegation that Crown Point Repair entered the State for business purposes, contacted North Carolina residents, or attempted to initiate any other business in the State. Consequently, this business involvement was limited to submitting warranty claims telephonically or through email to National Truck and receiving payment for those claims. In addition, though the relationship occurred for approximately 16 months of submitting these claims, this Court finds this relationship to be neither significant nor long-term. *See Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 190–191 (4th Cir. 2016) (contrasting the 20-year franchise agreement that gave rise to personal jurisdiction in *Burger King*, 471 U.S. at 467, with an agreement that did not "launch any ongoing collaboration or promise frequent interactions," holding that the later did not establish "significant or long-term business activities in the forum state.").

In addition, as it relates to National Truck's next contention that "the performance of duties occurred in the state," this Court is unclear as to what duties are being referenced by National Truck. National Truck does not allege that it has any contract with Crown Point Repair. Since the parties do not have a contract there are no contractual duties to be

performed in North Carolina or any other state. Either party could have ended these transactions at any time, and the transactions were not specific to North Carolina.

Finally, National Truck argues that the nature, quality, and extent of the parties' communications about the business constitute purposeful availment. This Court disagrees. It appears that the parties have engaged in a series of unrelated transactions, without a contract, over a period of approximately 16 months. Further, based on National Truck's briefing, it appears that the parties have generated approximately 5 or so emails for each transaction. Each of these contacts are only with plaintiff and do not involve the State of North Carolina other than the mere fact that National Truck happens to be located here. The Court cannot conclude that this volume of communication is either substantial or continuous. National Truck has failed to provide sufficient allegations to support such a finding.

The Court therefore concludes in considering the *Universal Leather* factors, such factors overwhelmingly weigh against a finding that Crown Point Repair purposefully availed itself of the privilege of doing business in North Carolina such that due process would support this Court's exercise of jurisdiction over them.

Likewise, National Truck's argument for purposeful availment in the internet context fails for similar reasons. Under the the *ALS Scan* test when analyzing whether a defendant directs electronic activity into a forum state, a plaintiff "must show that the defendant directed electronic activity into [the state] with the 'manifest intent of engaging in business or other interactions with that state in particular.'" *Burleson v. Toback*, 391 F. Supp. 2d 401, 411 (M.D.N.C. 2005) (quoting *Carefirst*, 334 F.3d at 401); *see also Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 594 (E.D. Va. 2003) ("[T]he defendant must *direct* activity into

12

the forum state, with the *intent* to engage in business *within the state*.") (emphasis in original); *Young v. New Haven Advoc.*, 315 F.3d 256, 262–63 (4th Cir. 2002) (To establish purposeful availment in the Internet context, proof is required "that the out-of-state defendant's Internet activity is expressly targeted at or directed to the forum state."). As mentioned above, the defendants contacts must be with the forum state itself, and the plaintiff cannot be the only link between the defendant and the forum state. *See id.* at 262 ("[A]lthough the place that the plaintiff feels the alleged injury is plainly relevant . . . it must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction . . . is to be upheld." (internal quotations omitted)).

Here, construing all allegations in the light most favorable to National Truck, it has failed to allege facts sufficient to establish that Crown Point Repair directed its electronic activity into North Carolina with the intent to engage in business with North Carolina in particular.

Though the third *ALS Scan* factor weighs in favor of National Truck because it has alleged facts sufficient to establish that the electronic activity could create their North Carolina cause of action, this factor alone however does not create a prima facie showing of specific jurisdiction.

In sum, weighing the *Universal Leather* and *ALS Scan* factors the Court concludes that National Truck has not made a prima facie showing sufficient for this Court to exercise jurisdiction. In light of this conclusion, the Court need not consider the other two prongs of the purposeful availment test. *Pathfinder Software, LLC v. Core Cashless, LLC*, 127 F. Supp. 3d 531, 540.

Accordingly, this Court finds that it does not have specific jurisdiction over Crown Point Repair. Because this Court finds it lacks personal jurisdiction over Crown Point Repair, the Court will grant Crown Point Repair's Motion to Dismiss under Rule 12(b)(2) and dismiss Crown Point Repair's Motion to Dismiss for improper venue under Rule 12(b)(3) as moot.

For the reasons stated herein, the Court enters the following:

### ORDER

**IT IS THEREFORE ORDERED** that Crown Point Repair's Motion to Dismiss, (ECF No. 8), pursuant to Rule 12(b)(2) is **GRANTED** and as it relates to Rule 12(b)(3) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that this action is **DISMISSED,** and the case is terminated.

This the 24th day of September 2021.

/s/ Loretta C. Biggs
United States District Judge